# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SHAWN GUERRERO, #250758

    Petitioner,

v.                                                                                      Case No. 07-CV-10644

JERI ANN SHERRY,

    Respondent.
                                                   /

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Shawn Guerrero has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Straits Correctional Facility in Kincheloe, Michigan. He claims he received ineffective assistance of trial counsel, rendering his guilty plea involuntary and unknowing for his convictions for discharge of a firearm in or at a building, assault with intent to do great bodily harm less than murder, felon in possession of a firearm, felony firearm, and carrying a concealed weapon. The court will, for the following reasons, deny the petition.

## I. BACKGROUND

Petitioner's convictions arise from a shooting at the Bell Bar in Bay City, Michigan on August 16, 2002. On that evening, Petitioner was at the Bell Bar consuming alcohol when he became involved in a dispute with another patron. (2/19/03 Plea Hrg. Tr. at 8.) Petitioner pulled out a gun and fired it "a couple of times." (*Id.*) After Petitioner was forcibly removed from the bar, he pointed the gun at the window of the bar and fired several shots. (*Id.*) When the bullets broke through the window, Jacqueline

Witherspoon, a patron inside the bar, was injured by flying glass. (*Id.*) Witherspoon's injury resulted in the loss of one of her eyes. (*Id.*) After the shooting, Petitioner fled the scene and discarded the gun. (*Id.*)

Petitioner was charged as a habitual fourth offender with the following offenses: discharge of a firearm in or at a building (Count I), assault with intent to murder (Count II), felon in possession of a firearm (Count III), felony firearm (Count IV) and carrying a concealed weapon (Count V).

On February 19, 2003, the parties were prepared to go to trial, but due to an apparent scheduling conflict it was unclear whether the trial would proceed. (2/19/03 Tr. at 3.) At this time, Petitioner informed the court that he wanted to fire his attorney, E. Brady Denton, because, during the six months of his incarceration, Denton had not visited him or returned any of his letters. (*Id.* at 4.) The court responded, "I'm going to talk with [you] about this later because Mr. Denton's not going anywhere. He's going to start [another court proceeding]. But I'll talk with you when everybody else leaves . . . ." (*Id.*) The court then recessed for two and a half hours. (*Id.*) During recess, the possibility of a plea bargain was discussed. (*Id.*) After recess, the court informed Petitioner that the prosecution was willing to offer him the choice between two different plea bargains. (*Id.*) While on the record, the prosecution explained in detail the two plea bargains offered to Petitioner:

> Your Honor, I gave Mr. Guerrero the option of two different ways of resolving the case. First, that he could plead guilty as charged and he'd admit his habitual offender fourth status, and we would recommend a 225-month cap on the minimum sentence, that works out to a 18.75 years, plus two years which would be served consecutively on the felony firearm charge.

2

> Or at his discretion to plead guilty to all of the charges except assault with intent to murder charge. We would move to add a charge of assault with intent to commit great bodily harm less than murder, which the defendant would have to plead to, and the defendant would admit his habitual offender fourth status, and we would provide no sentence cap in that circumstance.

(*Id.* at 5.) Petitioner responded that he would plead guilty to option two. (*Id.* at 7.) The court asked the prosecution to present its proofs. (*Id.*) The prosecution explained to the court that Petitioner wrote a letter to Jacqueline Witherspoon in which he apologized for her injuries and explained that he was not shooting at her. (*Id.* at 8.) In addition, the prosecution informed the court that Petitioner, in a custodial statement, admitted that he was "probably" shooting at the man with whom he had a dispute in the bar. (*Id.* at 9.)

The court then reconfirmed Petitioner's desire to plead guilty to option. (*Id.* 10-11.) Next, the court inquired whether Petitioner still wanted to fire his attorney. Petitioner stated: "[n]o I'll take him." (*Id.* at 11.) The court then recessed to allow Petitioner further time to consider his decisions. (*Id.*)

After recess, defense counsel informed the court that Petitioner accepted the plea bargain. (*Id.* at 12.) Defense counsel, however, misstated the terms of the plea bargain previously discussed on the record. The prosecution corrected defense counsel's misstatement and restated the terms of option two as they were previously discussed on the record. (*Id.*)

After the clarification, the court asked Petitioner under oath if it was correct that he was "entering a plea of guilty to discharge of a firearm in a building, assault with intent to do great bodily harm less than murder, possession of a firearm by a felon, possession of a firearm while committing a felony, and carrying a concealed weapon."

3

(*Id.* at 13.) Petitioner responded: "Yes." (*Id.*) In addition, Petitioner stated that he understood the nature of the charges against him and that he was freely and voluntarily entering the plea of guilty to those charges. (*Id.* at 14.) Petitioner testified that he was not promised anything other than the plea stated on the record and that no one had threatened him. (*Id.* at 17.) The court subsequently found that Petitioner's plea was understandingly and voluntarily made. (*Id.* at 20.)

As a fourth habitual offender, Petitioner was sentenced to 60-180 months' imprisonment for the discharging a firearm in or at a building conviction, 76-180 months' imprisonment for the felon-in-possession conviction, 76-180 months' imprisonment for the carrying a concealed weapon conviction, 120-180 months' imprisonment for the assault with intent to do great bodily harm less than murder conviction, all to be served concurrently with one another and consecutively to two years' imprisonment for the felony-firearm conviction.

Petitioner filed a delayed *pro se* application for leave to appeal in the Michigan Court of Appeals. (Pet.'s Appeal Application.) Petitioner requested relief on the ground that:

> The court would not let me fire my lawyer[,] Brady Denton[,] due to misrepresentation[;] therefore[,] Defendant was forced to take the plea that Defendant took or get life. It was either take the [ ] [assault with intent to commit great bodily harm less than murder] or the assault [with intent] to murder which should of never been one of my charges. They did not let me tell my part of the story at my plea. They said things how they wanted to put it, if I would of told it how it happened, it would of been different.

(*Id.* at ¶ 5.) On July 30, 2003, the Michigan Court of Appeals denied Petitioner's application for leave to appeal for lack of merit. *People v. Guerrero,* No. 247788 (Mich. Ct. App. July 30, 2003). Petitioner did not seek leave to appeal this decision in the

4

Michigan Supreme Court. (*See* Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, 8/1/07.)

On November 5, 2003, Petitioner filed a *pro se* motion for relief from judgment in the trial court. The trial court appointed counsel, who then filed a supplemental motion for relief from judgment, which was denied on November 15, 2004. *People v. Guerrero*, No. 02-22079-FC-3 (Saginaw County Circuit Court Nov. 15, 2004).

Petitioner, through counsel, filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I. Should Mr. Guerrero be allowed to withdraw he plea as it was not voluntarily, intelligently, or understandingly made where (1) Mr. Guerrero expressly requested that his attorney be fired due to ineffective assistance of counsel by failing to meet or correspond with him while he was incarcerated for over six months, and his attorney failed to investigate or interview witnesses, and discuss trial strategy and possible defenses with Mr. Guerrero; (2) Mr. Guerrero's attorney advised the court of an entirely different plea which he had discussed with Mr. Guerrero; (3) the court failed to confirm the terms of the plea agreement with Mr. Guerrero pursuant to MCR 6.302(C)(2), and where; (4) Mr. Guerrero's plea was illusory as he received no bargain in exchange when he pled to each and every crime he was charged with and where the evidence was insufficient to prove the "dismissed" charge anyway?

II. Is Mr. Guerrero entitled to a *Tucker* hearing, or a resentencing, regarding the trial court's consideration of prior adjudications where the adjudication actually resulted in a deprivation of physical liberty, and where there was no evidence that the defendant validly waived his right to counsel with respect to those adjudications and sentences?

III. Should Mr. Guerrero be allowed to withdraw his plea where it was not understandingly or voluntarily made where he was represented by trial counsel who did not provide effective assistance of counsel in violation of Mr. Guerrero's constitutional right to effective assistance of counsel?

The Michigan Court of Appeals denied leave to appeal. *People v. Guerrero*, No. 266590 (Mich. Ct. App. June 7, 2006).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Guerrero*, No. 132108 (Mich. Dec. 28, 2006).

On February 13, 2007, Petitioner filed the pending petition for a writ of habeas corpus, claiming that his trial attorney was ineffective because he: (1) failed to meet with Petitioner during his pretrial incarceration to discuss trial strategies or defenses and failed to investigate and interview witnesses, (2) incorrectly informed Petitioner of the terms of the plea agreement, (3) failed to object when the court failed to comply with a Michigan Court Rule, (4) failed to object to the illusory nature of the plea bargain, (5) failed to object to the prosecution's characterizations of Petitioner's statements as "confessions" and (6) failed to challenge Petitioner's prior convictions.

## II. STANDARD

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court

6

has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 410-11. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

Further, where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, *de novo* review of the claims, but

7

remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

### III. DISCUSSION

### A. Legal Framework

The guilty plea is a "grave and solemn act to be accepted only with care and discernment . . . ." *Brady v. U.S.*, 397 U.S. 742, 748 (1970). A valid guilty plea must be voluntarily and intelligently made. *Id.* at 747-748. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. The voluntariness of a plea "can be determined only by considering all the relevant circumstances surrounding it." *Id.* at 749.

"Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Id.* at 748. Once a petitioner admits "in open court that his guilty plea is voluntary [he] 'may not ordinarily' repudiate his statements to the sentencing judge." *U.S. v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (quoting *Fontaine v. U.S.*, 411 U.S. 213, 215 (1973)). The Sixth Circuit has stated that a petitioner who has pleaded guilty is bound by an in-court assertion that the plea was knowing and voluntary:

> If we were to rely on [petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. [W]here the court has scrupulously

8

> followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotations omitted).

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) established a two-prong test for determining ineffective assistance of counsel. A petitioner must show (1) that defense counsel was deficient, and (2) that counsel's deficiency prejudiced the defense. *Id.* Establishing that defense counsel was deficient "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'"). Second, a petitioner may satisfy the second, prejudice, prong by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

9

The two-part *Strickland* test applies to claims of ineffective assistance of counsel based upon counsel's conduct prior to the entry of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In the context of guilty pleas, the first half of the *Strickland v. Washington* test is the same standard set forth above. *Id.* The second, or prejudice, requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

## B. State Court Decision

The last state court to issue a reasoned opinion regarding Petitioner's ineffective assistance of counsel claims was the trial court, which denied Petitioner's motion for relief from judgment. Applying *Strickland's* two prong-test, the trial court found that defense counsel's "actions or inactions" did not rise to the level of ineffective assistance of counsel. *People v. Guerrero,* Saginaw County Circuit Court, No. 02-22079-FC-3, 11/15/04 Order at 3. Addressing Petitioner's claim that Denton did not adequately prepare, consult or investigate, the court held that Petitioner did not satisfy the first prong of *Strickland* because the depth of Denton's trial preparation, consultation and investigation were reasonable. (*Id.* at 3-4.) The trial court emphasized that "Mr. Denton attended and questioned the victim and another witness at the preliminary examination . . . [and that] he attended a hearing on December 10, 2002, wherein he indicated to the Court that [ ] [Petitioner's] case still required trial." (*Id.* at 3.) In addition, the trial court concluded, without further discussion, that none of Petitioner's remaining ineffective

10

assistance of counsel claims rendered his plea involuntary. *(Id.)*

## C. Analysis

### 1. Claims Waived by Guilty Plea

Respondent argues that Petitioner's ineffective assistance of counsel claims were waived by his guilty plea. Once a petitioner pleads guilty, he "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Id.*

However, a guilty plea does not waive an ineffective assistance of counsel claim where a petitioner claims that counsel's ineffectiveness rendered his plea involuntary. *See Claybron v. Stovall*, No. 05-73676, 2007 WL 551599, at *6 (E.D. Mich. Feb.20, 2007) ("a voluntary guilty plea waives all claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."). Thus, a claim for ineffective assistance of counsel claim is barred "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *U.S. v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

Petitioner purports to challenge the voluntary and knowing nature of his guilty plea with respect to all of his ineffective assistance of counsel claims. However, he fails

11

to assert a logical nexus between two of his ineffective assistance of counsel claims and his claim that his plea was rendered involuntary. That is, Petitioner fails to show how the following claimed instances of ineffectiveness implicate the voluntary and intelligent nature of his plea: counsel's failure to (1) object to the prosecution's characterization of certain statements as confessions and (2) challenge the court's consideration of his prior convictions. These claims constitute independent claims for ineffective assistance of counsel not impacting the voluntary and intelligent nature of his plea. Therefore, they are waived by Petitioner's guilty plea. See *McMann v. Richardson,* 397 U.S. 759, 771 (1970).

### 2. Remaining Ineffective Assistance of Counsel Claims

Petitioner's remaining ineffective assistance of counsel claims challenge the voluntary and knowing nature of his guilty plea and, therefore, are not waived by the guilty plea.

First, Petitioner claims that his attorney was ineffective because he did not consult with Petitioner while he was awaiting trial, failed to investigate potential witnesses, and failed to discuss possible defenses with Petitioner. "A brief consultation does not by itself establish that counsel's performance was inadequate." *White v. Godinez*, 301 F.3d 796, 800 (7th Cir. 2002). Petitioner has not identified who specifically should have been interviewed. Nor has Petitioner demonstrated how these testimonies would have impacted his decision to plea guilty or introduced facts not already revealed. Petitioner vaguely argues that counsel should have interviewed the other patrons at the bar. But, given that Petitioner's identity as the shooter was not at issue, and that Petitioner does not seem to assert self-defense or provocation, it is

12

unclear what exculpatory information Petitioner expected counsel to gather from these witnesses.

Petitioner also argues that counsel failed to advise him of the possible defense of voluntary intoxication.[1] In exchange for the guilty plea, the assault with intent to murder charge was dismissed. Petitioner contends that his guilty plea was not voluntarily and intelligently made because he was not informed that voluntary intoxication was a possible defense to the charge of assault with intent to murder. In the context of a guilty plea case, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

In Michigan, assault with intent to murder is a specific intent crime that requires proof of the following elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293 (1998). "Specific intent to kill 'may be proven by inference from any facts in evidence.'" *Id.* (quoting *People v. Hoffman*, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997)). Despite an individual's intoxication during the commission of a crime, when the events surrounding that crime nevertheless provide evidence of intent, a claim of ineffective assistance of counsel for

---

[1]Mich. Comp. Law § 768.37 abolished the defense of voluntary intoxication. However, such a defense was available to Petitioner because the offense occurred on August 16, 2002, and the statute abolishes the voluntary intoxication defense for crimes committed after September 1, 2002.

13

an attorney's failure to discuss a possible defense of voluntary intoxication may be negated.  *Hill*, 474 U.S. at 59.

In *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 585-587 (E.D. Mich. 2001), th petitioner pleaded guilty to first-degree home invasion for unlawful entry into his ex-wife's father's cabin.  The petitioner claimed that his guilty plea was involuntary because his attorney was ineffective in not informing him that voluntary intoxication could be a defense to the intent element of first-degree home invasion.  The court found that many of the events surrounding the crime provided evidence that the petitioner was not so intoxicated as to be unable to form the requisite intent, including that petitioner was sober enough to drive four hours to get to the scene of the crime, sober enough to find the cabin, which was located in a remote area and sober enough to terrorize his ex-wife and a friend for an hour and a half before getting back in his vehicle and driving away.  *Id.*  The court held that these facts showed that the defense of voluntary intoxication had no realistic chance of success and counsel, therefore, was not ineffective in failing to discuss it with the petitioner.  *Id.* at 587.

In this case, it is undisputed that Petitioner fired shots inside the bar after getting into a fight with another patron, and that he fired additional shots into the bar after he was forcibly removed from the premises.  (2/19/03 Tr. at 8.)  Petitioner's conduct could reasonably be conceived as planned and purposeful.  In addition, Petitioner attempted to conceal the offense.  After the shooting, Petitioner fled the scene and had the presence of mind to discard his gun.  (*Id.*)  In addition, Petitioner made an admission of guilt when he gave a custodial statement admitting that the man inside the bar with whom he had an earlier dispute was "probably" his target.  (*Id.* at 9.)  Given these

14

circumstances, the court concludes that it is unlikely that an intoxication defense would have succeeded at trial. Moreover, Petitioner fails to allege that, had his attorney advised him of this possible defense, Petitioner would not have pleaded guilty. Therefore, he has failed to show he was prejudiced by his attorney's representation in this regard. Consequently, he has failed to show that the trial court's holding was contrary to or an unreasonable application of clearly established federal law.

Second, Petitioner argues that his trial attorney was ineffective because he incorrectly advised Petitioner regarding the terms of the plea agreement. During Petitioner's hearing on February 19, 2003, the prosecution offered Petitioner the choice between two plea bargains, and clearly stated the terms of each. (*Id.* at 5.) Petitioner stated that he would plead guilty under the second option, but the court recessed to allow Petitioner time to reevaluate whether to plead guilty. (*Id.* at 7, 11) Petitioner claims that, during the recess, his attorney incorrectly advised him regarding the terms of the plea bargain. When court was back in session, counsel misstated the terms of the plea agreement on the record. (*Id.* at 12.) The prosecution immediately corrected defense counsel and restated the terms of the plea discussed before recess. (*Id.*) After that clarification, the court also correctly stated the terms of the plea bargain and Petitioner stated under oath that these were the terms to which he agreed. (*Id.*)

Counsel's mistake did not implicate the voluntariness or intelligence of Petitioner's plea because the error was corrected by the trial court. *Ramos*, 170 F.3d at 565. Because any confusion regarding the terms of the plea bargain was clarified by the court and affirmed by Petitioner, Petitioner cannot show that he was prejudiced by his counsel's misstatement. Thus, the trial court's determination that counsel was not

15

ineffective was not contrary to and did not involve an unreasonable application of clearly established Federal law.

Third, Petitioner argues that counsel was ineffective in failing to object when the court failed to confirm the terms of the plea agreement as required by Michigan Court Rule 6.302(c)(2). Rule 6.302(c)(2) provides that "the court must ask the prosecutor or the defendant's lawyer what the terms of the agreement are and confirm the terms of the agreement with the other lawyer and the defendant." The record clearly indicates that the court confirmed the terms of the plea bargain and verified that Petitioner's plea was knowingly and voluntarily made. Therefore, defense counsel was not deficient for failing to object.

Fourth, Petitioner argues that counsel was ineffective in failing to object to the illusory nature of the plea bargain. Petitioner, however, fails to show that the plea bargain was illusory. In exchange for his plea, the assault with intent to murder charge was dismissed. Petitioner argues that the prosecutor could not have proven the requisite intent for assault with intent to murder and that the plea bargain, consequently, provided no benefit to him. There was sufficient evidence from which a jury could have concluded that Petitioner possessed the requisite intent for assault with intent to murder. Moreover, even if the prosecution could not show that Petitioner possessed the specific intent to commit assault with intent to murder, a plea is not considered illusory for the sole reason it is induced by the dismissal of a charge which is later discovered to have been based on insufficient evidence. *U.S. v. Quisenberry*, 198 F.3d 248, 1999 WL 1073659, at *6 (6th Cir. 1999) (unpublished opinion) (A "guilty plea stands even if it were the case that another charge, fear of which helped induce the guilty plea, were to

turn out to lack adequate foundation.").

In sum, Petitioner has failed to show that the state court's decision that his counsel was not ineffective was contrary to or an unreasonable application of Supreme Court precedent. The court will therefore deny the petition.

## B. Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.") (overruled on other grounds).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show . . . that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any

claims upon which habeas relief may be granted.  Therefore, the court will deny a certificate of appealability.

## IV.  CONCLUSION

IT IS ORDERED that the petition for writ of habeas corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2008, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522